(No. 21709.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CARL A. MUELLER, Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 13, 1933.*

BENJAMIN C. BACHRACH, and CHESTER E. CLEVELAND, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Plaintiff in error, Carl A. Mueller, (hereafter referred to as the defendant,) was indicted in the criminal court of Cook county for a violation of section 4 of "An act to revise the law in relation to banks and banking," (Cahill's Stat. 1931, chap. 16a, p. 169,) commonly called the Banking act. He pleaded not guilty, and upon a trial by the court without a jury he was found guilty and sentenced to imprisonment in the penitentiary for an indeterminate period of from one to ten years. The case comes here for review by writ of error.

The concluding paragraph of section 4 of the Banking act is as follows: "Any officer, director or employee of any bank or association organized under the provisions of

this act, who shall willfully and knowingly subscribe to or make or cause to be made any false statement with intent to deceive any person or persons authorized to examine into the affairs of such bank or association, upon conviction thereof, shall be punished by imprisonment of not less than one year or more than ten years in the penitentiary."

The defendant was the former president of the now defunct Laramie State Bank of Chicago. The indictment charged that the defendant "unlawfully, feloniously, willfully, knowingly and deceitfully subscribed to, made and caused to be made said false and fraudulent report and statement in writing hereinbefore set forth, with intent to thereby deceive said Auditor of Public Accounts of the State of Illinois, who was so authorized as aforesaid to examine into the affairs of said Laramie State Bank of Chicago." It charged that a statement subscribed by Alfred E. Brucker, cashier of the bank, and attested by the defendant and Ragner A. Benson as directors, was made on July 8, 1929, to the Auditor of Public Accounts, showing the condition of the bank at the close of business on June 29, 1929; that this statement was false, in that it showed cash resources of more than $38,000 in excess of the true amount; that it stated the overdrafts in the bank at $37,000 less than the true amount; that it showed no loans exceeding the limit prescribed by section 10 of the Banking act, when, as a matter of fact, such loans amounted to more than $176,000 in excess of such limit; that it understated the past-due loans by more than $212,000; that it represented that the defendant had no indirect liabilities for loans made by the bank, when, on the contrary, he was so liable in the sum of $139,380.27, and lastly, that the statement falsely showed that the defendant had no overdrafts in the bank, when, in truth, he was overdrawn to the amount of $38,629.41. The statement to the Auditor was the regular quarterly report required by section 7 of the Banking act.

In behalf of the defendant it is claimed that the issues before the trial court were finally reduced to a determination of whether the defendant willfully and knowingly subscribed to or made or caused to be made a false statement concerning his alleged overdraft, with intent to deceive the Auditor. In this connection the defendant places reliance upon the following reasons given by the trial judge in finding him guilty: "The court cannot escape the conclusion of fact from the evidence that Mr. Mueller, together with Mr. Brucker, caused the report dated June 29, 1929, to be falsified in respect to his overdraft. The court finds the defendant guilty, and I think I will let the bond stand."

From this statement of the trial judge the defendant insists that he was found guilty of making a false statement in a report made pursuant to section 7 of the Banking act, which carries its own penalties; that section 4 deals with the corporate or internal affairs of the bank and not its financial condition, as does section 7; that the report under section 7 is for publication in a newspaper for the information of the public as to the financial standing of the bank, while section 4 relates to a different function—the making of false statements intended to deceive any person authorized to examine into the affairs of the bank.

The language of the indictment expressly charged the defendant with a violation of the provisions of the concluding paragraph of section 4 of the Banking act. The penalties prescribed for a violation of this section apply with equal force to "any officer, director or employee of any bank." An examination of the several sections of the act shows that while sections 7 and 8 also provide penalties for other breaches of duty, they are not general but apply only to the violations specified in each of such sections. Thus, section 7 provides for the making of reports on the financial condition of the bank at least once every three months, and further provides that the officers of the bank shall transmit such reports to the Auditor within five days

after receiving calls for the same, and that "any bank failing to make and transmit such report, or to comply with any provisions of this act, shall be subject to a penalty of one hundred dollars ($100) for each day after five (5) days that such report is delayed beyond that time." It is obvious that the penalty prescribed by section 7 is only intended to fine or penalize banks for delay, in order to promptly secure the reports desired. Section 7 confines its penalty to the corporation and prescribes no penalty against any individual for making false statements regarding the bank's condition with intent to deceive, as is provided by section 4. Section 8 makes it a misdemeanor for any bank, officer, director or employee to "make any loan or grant any gratuity to any bank examiner," and the penalty provided for its violation cannot, by the limited scope of its own language, be extended to a violation of any other section of the act. The penalty provided in the concluding paragraph of section 4, however, is applicable generally to any of the several sections of the Banking act which require statements to be made to those authorized to examine into the affairs of banks. No language is to be found anywhere in the act to restrict this general application of its provisions, nor does any other section impose any penalty for the same or similar violation. Even conceding the validity of the defendant's argument that the violation occurred in falsely subscribing to a statement required under section 7 of the act, it is clear that the penalty provided by section 4 applied squarely to that violation. Under section 7 the bank, as a corporation, was liable to a fine of $100 for each day after five days that it delayed the sending of its report to the Auditor, but this corporate liability of the bank to pay a fine under section 7 did not in any manner lessen the criminal liability of the defendant if he subscribed to a false report in violation of the concluding paragraph of section 4. In other words, the penalties under sections 4 and 7 may both be invoked in the same

transaction if the making or subscribing of a false statement with intent to deceive is also delayed more than five days after the call.

The defendant urges a strict construction of section 4, such as would limit the operation of its penal provisions to its own contents, under the rule that penal statutes are to be strictly construed. The rule that penal statutes are to be strictly construed does not require such a construction as will defeat the plain intent of the legislature. (*Hamer* v. *People,* 205 Ill. 570.) While the concluding paragraph of section 4 is undoubtedly penal in its nature, so that matters foreign to its provisions cannot be brought in by mere construction, (*Chicago, Rock Island and Pacific Railway Co.* v. *People,* 217 Ill. 164,) yet the Banking act, considered in its entirety, was expressly created to do away with an evil situation under which certain banks and their officers in this State have worked grave economic wrongs upon their creditors. The recognized duty of the court in interpreting a statute is to put upon the language of the General Assembly the plain and rational meaning attached to it by the legislature and to promote the objects of the statute. (*Armour & Co.* v. *Industrial Board,* 275 Ill. 328.) Section 4 treats of many matters in connection with the organization and operation of banks. Among other things it provides: "The directors shall cause to be kept suitable books of record of all the transactions of the bank or association and shall furnish to the Auditor lists of the stockholders and copies of any other records the Auditor may require." This language does not confine the duties of the bank directors and officers simply to furnishing copies of the records of the bank to the Auditor while it is being organized, but includes also the records of the bank as a going concern. From this it will be seen that the provisions of section 4 are not confined exclusively to duties regarding the organization of a bank, as the defendant claims, but that its provisions, as well as its penalties, ap-

ply equally as well to the operations of a bank after it is organized.

The defendant further argues that the concluding paragraph of section 4 of the Banking act is repugnant to both the Federal and State constitutions, as it is too vague and uncertain to create a crime and its enforcement deprives the defendant and others similarly situated of their liberty without due process of law. By an extension of this argument it is said that the penal paragraph does not constitute a fixing by the legislature of an ascertainable standard of guilt and is not adequate to inform persons accused of violations thereof of the nature and cause of the accusations against them. In support of this position it is suggested that under the provision in question the false statement may not be material and need not even pertain to the affairs of the bank; that, for instance, if some bank clerk told the bank examiner, with intent to deceive him, that the bank president was out somewhere attending to the business of the bank when he was actually playing golf, the clerk could be imprisoned in the penitentiary for from one to ten years. This argument is specious and too far-fetched to be entitled to serious consideration. As said before, the statute must receive a reasonable construction. The several provisions of the act must be construed together in order to fairly determine the intention of the legislature and the relation of the different sections to each other. The State regulation of banks and the conduct of the banking business are recognized as necessary to the economic welfare of the people. The right of the State to regulate banks has not been attacked, and the right to regulate necessarily carries with it the right to punish those who come within the regulations and fail to obey the same. (*Hronek* v. *People,* 134 Ill. 139.) It is, of course, conceded that the penal provisions of section 4 must be reasonably enforced and not used in a frivolous manner to punish any harmless act. The statement alleged to be false must be one that is

pertinent and relevant to the affairs of the bank. It must be made to the State Auditor or to one of his examiners or to any other person authorized to examine into the affairs of the bank. From a consideration of the Banking act as a whole, we find no such uncertainty or ambiguity in its language as would deceive or mislead any person of ordinary intelligence. (*People* v. *Lloyd,* 304 Ill. 23.) The act therefore does not violate the due process clause of either the State or Federal constitution. Neither is there any delegation of legislative powers to administrative officers in order that substantial features of the concluding paragraph of section 4 may be supplied. The General Assembly has very plainly forbidden certain persons from making or subscribing to false statements regarding the affairs of a bank with intent to deceive any person or persons authorized to examine into its affairs. The language used requires no extension, by construction, to make criminal that which is clearly within its meaning. The dividing line between what is lawful and what is unlawful is not left to mere conjecture, and the case is easily distinguished from *United States* v. *Cohen Grocery Co.* 255 U. S. 81, and other cases cited by the defendant, where it was held that the sections involved did not forbid any specific or definite act.

Counsel for the defendant also insist that the title of the Banking act, viz., "An act to revise the law in relation to banks and banking," is not broad enough to cover the creation of a new felony enacted by the concluding paragraph of section 4, and that the constitutional provision (art. 4, sec. 13,) "that no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title," is thereby violated. In support of this position the defendant argues that this court should not countenance the creation of a new crime by an obscure paragraph under a special title in connection with banks and banking; that such provisions are usually found in the

Criminal Code, and that the legislative practice in this regard "would seem to be a dangerous approach to the practice of Caligula in posting laws where they could not be and would not be found." This court is only concerned with the constitutionality of the penal statute involved and not with the wisdom of the legislature in enacting it as part of the Banking act. Whether it is located in one chapter or another is immaterial, so long as it is properly embraced within and germane to the title and subject matter of the act in which it is placed. It is not necessary that the title shall express all of the minor divisions of the general subject to which the act relates. (*Hronek* v. *People, supra.*) It is not required that the title be either an abstract, a synopsis or an index of the contents of the act, and where new crimes are created of which no hint is given in the title the act will not thereby be void if its title fairly indicates the general subject and is not calculated to mislead the legislature or the people. (*People* v. *McBride,* 234 Ill. 146.) The constitution is obeyed if all of the provisions relate to one subject indicated in the title and are parts of it or are incident to it or reasonably connected with it. (*People* v. *Williams,* 309 Ill. 492; *People* v. *Jiras,* 340 id. 208.) In the case before us the penalty provided by section 4 bears a direct relation to the subject matter and purposes of the act, and it is therefore not unconstitutional.

Equally without merit is the stand taken by the defendant that the General Assembly had no right to submit to a vote of the people for approval an act creating a felony and providing for its punishment. What we have said above regarding the enactment of the Banking act to extend State control over the organization and operation of banks applies particularly to this point. The law to regulate the organization and operation of banks would have been of little force if the State had not provided in the act that a violation of its provisions would subject the offender to punishment. In other words, the General Assembly saw

the need of compelling the observance of the act. Regulations without "teeth" or penalties for their violation are difficult of enforcement. The act was necessarily submitted to the people for approval by constitutional mandate, and it would have been unconstitutional if it had not been so submitted. (*Reed* v. *People*, 125 Ill. 592.) The fact that it contained penal provisions did not alter the rule. (*People* v. *McBride, supra.*) In this connection the case of *People* v. *Barnett*, 344 Ill. 62, is relied upon by the defendant as authority for his position that the act under consideration is invalid as a result of its submission to popular referendum. He asserts that no constitutional authority exists in the legislature to make statutes creating felonies effective upon approval by the people and that such authority cannot be exercised where not expressly granted. The *Barnett case* is authority for the proposition that the legislature cannot delegate to the people its legislative power. But that case is to be distinguished from the present case because there the subject matter of legislation— *i. e.,* jury service by women—was a subject wherein full power and responsibility for legislation rested exclusively in the General Assembly. We there held that all legislative power inherent in the people of this State had been vested in the General Assembly, "except in those cases in which the power has by express limitation or necessary implication been withheld." With reference to banks we find an express limitation upon the powers of the legislature in the language of section 5 of article 11 of the constitution: "No act of the General Assembly authorizing or creating corporations or associations with banking powers  *   *   * shall go into effect or in any manner be in force unless the same shall be submitted to a vote of the people," etc. The distinction between the *Barnett case* and the present is clearly apparent. The fact that a felony was created by certain provisions of the Banking act did not, for reasons hereinabove stated, affect either the duty of the legislature

to submit the act to popular referendum or the validity of the act after its approval.

On the question of the sufficiency of the evidence to show the defendant's guilt, it is argued that he was convicted upon the sole testimony of Brucker, who by his own statement was an accomplice. The argument here is that Brucker, as cashier of the bank, had prepared the statement from the books and records of the bank in his possession as cashier, and that the defendant, who was president of the bank, only attested Brucker's statement casually, as a matter of course, without knowledge of its falsity, and thus without any intent to deceive. The record, however, does not bear out this contention of the defendant's innocence and lack of knowledge. By his own testimony he admits that he had a large overdraft in the bank throughout the year 1929 and had various conversations with Brucker concerning this fact. He admitted a conversation with Brucker about the manner in which the overdraft was to be handled in the report to the Auditor. Brucker testified that the defendant's overdraft was covered up by the entry on the books of a fictitious deposit of $38,500 placed to the defendant's account, when, in fact, no such deposit was actually made. The defendant denies knowledge of Brucker's method of handling this transaction. Brucker testified that the defendant caused him to make up the report as it was, while the defendant says that the report was made by Brucker upon his own volition. A review of the record shows that when the report was submitted to the defendant, whether made or caused to be made by him, he possessed knowledge of the fact that his account with the bank was greatly overdrawn and knew it had been in that condition for nearly a year. He was president and one of the directors of the bank, and as such was charged by the provisions of the Banking act with a diligent and honest administration of the bank's affairs. The poor financial condition of the bank was in a measure due to his constant

overdrafts and his indirect liabilities to the bank. By reason of his discussions of his overdrafts with Brucker he knew that the report of June 29, 1929, was a false statement, that it did not reflect the true condition of the bank, and that it was so prepared in order to deceive the Auditor of the State, who was authorized by law to examine into the affairs of the bank. Despite this knowledge and his grave responsibilities the defendant subscribed his name and signature to the report, thereby attesting its correctness to the Auditor. This action clearly subjected him to the penalty provided by section 4 of the Banking act, and no error has been assigned which would justify a reversal of the judgment of guilty imposed upon him by the trial court.

The judgment of the criminal court of Cook county is accordingly affirmed.

*Judgment affirmed.*