(No. 21518.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARLAN A. KINGSBURY, Plaintiff in Error.

*Opinion filed June 16, 1933.*

JESSE BLACK, JR., and CLARENCE W. HEYL, for plaintiff in error.

OTTO KERNER, Attorney General, LOUIS P. DUNKEL-BERG and NATHAN T. ELLIFF, State's Attorneys, and J. J. NEIGER, (WALLACE J. BLACK, and HAROLD J. RUST, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Harlan A. Kingsbury, plaintiff in error, Henry W. Hops and Henry Denhart, all of whom had been officers and directors of Henry Denhart & Co., a corporation organized under the Banking law of this State and engaged in the banking business at the city of Washington, were on December 23, 1930, indicted by the grand jury of Tazewell county for willfully, knowingly and feloniously making a false statement with reference to the condition of the bank with intent to deceive the Auditor of Public Accounts of

this State. Hops died before trial. Kingsbury and Denhart were tried in the circuit court of said county by a jury, which found Denhart not guilty and Kingsbury guilty. After his motions for a new trial and in arrest of judgment were overruled by the court Kingsbury was sentenced to imprisonment in the penitentiary for from one to ten years. He has sued out a writ of error for a review of the record.

The indictment is in two counts, both of which charge that a false statement of the condition of the bank was made in writing on March 27, 1930, to the Auditor of Public Accounts with intent to deceive him as to the true condition of the bank, in violation of section 4 of "An act to revise the law with relation to banks and banking." The first count sets out *in hæc verba* the alleged false statement, which was the report of the condition of the bank as published in a newspaper. The published report so set out in that count of the indictment was not admitted in evidence. The second count of the indictment was in general terms and did not set out the alleged false statement. A bill of particulars was filed by the People, in which it was stated that the People would put in evidence the written report of the condition of the bank on March 27, 1930, which was sworn to by Kingsbury and attested by Hops and Denhart on April 1, 1930, and received by the Auditor of Public Accounts on April 4, 1930; that the falsity of the report would be proved by (*a*) evidence showing that a note executed by C. J. Driever and C. H. Boyer for $6964.75 was carried as an asset of the bank and so included in the report when the defendants had agreed with the makers of the note that they would never be called upon to pay it or any part of it; and (*b*) evidence that on or about March 9, 1929, the bank, being the owner of six notes (described in some detail) signed by Henry Davis and secured by real estate mortgage, sold and transferred the notes to certain named persons, that each of the notes bore the indorsement of the bank, and that by reason of the indorsements the

amounts due on the notes became and were liabilities of the bank but were not listed as liabilities in the report. Before the case went to the jury, the court, on motion of the defendants, excluded from the consideration of the jury all evidence with reference to the Driever and Boyer note described in paragraph (a) of the bill of particulars.

The evidence shows the following undisputed facts: Denhart was president and Kingsbury was cashier of the bank. Both of them were directors of the bank. On February 29, 1924, Henry Davis and wife executed a trust deed to Denhart for 137 acres of land in Peoria county, near the city of Peoria, to secure the payment of $30,000 borrowed from the bank and represented by twenty notes numbered from 1 to 20—ten notes for $1000 each, four notes for $1500 each, two notes for $2000 each and four notes for $2500 each. Each of the notes was signed by Davis, was payable to his order and indorsed by him in blank, was due on March 1, 1929, and bore interest at six per cent, payable annually, as evidenced by notes for the interest attached to the principal notes. These principal notes, with interest notes attached, were sold by the bank. On November 27, 1928, Davis sold the land described in the trust deed to the National Airways System, Inc., (hereinafter called the corporation,) for $58,225, and he and his wife executed and delivered to the corporation a warranty deed to the premises subject to the trust deed to Denhart, the corporation assuming and agreeing to pay the indebtedness secured by that trust deed. For part of the purchase price the corporation gave Davis its notes for $21,279.58, secured by second mortgage on the premises. On March 8, 1929, an agreement was entered into between Denhart, as trustee, Davis and wife and the corporation, whereby the time for payment of the notes secured by the trust deed to Denhart was extended to March 1, 1933. Across the bottom of each such note were written these words, "Extended for four years from March 1, 1929." There were

attached to each note, interest notes or coupons for the annual interest to become due. These interest notes were dated February 19, 1929, and signed by the corporation. By the extension agreement Davis and wife also promised and agreed to pay the interest notes for interest from March 1, 1929, to March 1, 1933. The notes mentioned in paragraph (b) of the bill of particulars are six of the notes secured by the trust deed to Denhart, being notes numbered 2, 7, 17, 18, 19 and 20, respectively. Note No. 2, for $1000, was purchased from the bank on March 5, 1924, by Anna J. Conrard. Note No. 7, for $1000, was sold by the bank on March 5, 1924, and re-purchased by it on March 9, 1929, and on that date sold by the bank to Joseph D. Conrard. Notes Nos. 17, 18, 19 and 20, for $2500 each, were sold by the bank on March 5, 1924, and were re-purchased by it on March 8, 1929. On March 9, 1929, note No. 17 was sold by the bank to Joseph D. Conrard, notes Nos. 18 and 19 were sold by the bank to Bertha Wiltz, and note No. 20 was sold by the bank to Anna J. Conrard. When these notes were sold and transferred to the purchasers they were not indorsed by the bank, but on or about February 25, 1930, at the request of Conrard they were indorsed by the bank. On April 1, 1930, a report to the Auditor of Public Accounts of the condition of the bank on March 27, 1930, on a form provided by him for that purpose, was made and sworn to by Kingsbury as cashier and attested by Denhart and Hops as directors. In this report the liability, if any, of the bank on account of the indorsement of these notes was not shown. The bank was closed on April 11, 1930, and a receiver therefor was appointed on May 2, 1930.

The first contention of plaintiff in error is that the court erred in overruling his motion to quash the indictment. One of the grounds assigned in such motion was that the statute on which the indictment is based is unconstitutional and void, and it is contended that the indictment should

have been quashed on that ground. The statute has been held to be valid by this court in *People* v. *Mueller,* 352 Ill. 124, and all of the arguments against its validity that are made in this case were considered in that case and held to be without merit. Another ground of the motion to quash was that the indictment was found on the evidence of Wallace J. Black before the grand jury and his name was not indorsed upon the back thereof, as required by section 17 of the Jurors act. It is shown by evidence heard on the motion to quash, that Black did appear at least two times before the grand jury that found the indictment, and that the grand jury returned thirty-six indictments against Kingsbury, Hops and Denhart. The State's attorney and Black testified that Black testified before the grand jury in connection with its investigation relating to a charge against the officers of the bank of receiving deposits knowing the bank to be insolvent but did not testify concerning the offense of making a false statement to the Auditor of Public Accounts. The statute requiring the indorsement on the indictment of the names of the witnesses on whose evidence it is found is mandatory. (*People* v. *Bladek,* 259 Ill. 69; *Andrews* v. *People,* 117 id. 195.) The names of eighteen witnesses were indorsed on the back of the indictment in this case, and the presumption is, in the absence of a showing to the contrary, that they are the witnesses, and the only witnesses, on whose evidence the indictment was found. (*Andrews* v. *People, supra.*) There was no showing that the finding of the indictment in this case was in any part upon the evidence of Black. There was no error committed in overruling the motion to quash the indictment.

Plaintiff in error also contends that the court erred in overruling his motion that Wallace J. Black, who is an attorney in Peoria, be not permitted to assist the State's attorney in the trial of the case. In support of the motion it was shown that Black had in two or three cases acted as attorney for the bank in foreclosures of mortgages; that he

had drawn the will of Denhart; that he had, after the bank was closed, been employed by 224 creditors of the bank having claims totaling $137,809.74, to look after their interests in the matter of the liquidation of the bank and by his contract of employment was to receive five per cent of the money realized on such claims as his fee; that he drew the agreement for extension of the time of payment of the notes secured by the trust deed of Davis and wife to Denhart and acted as escrow agent for the parties thereto in consummating the extension agreement, and that after the bank closed he went to see Kingsbury and told him he would do anything he could for him. Black testified that he had never been attorney for the bank in general matters and had never been consulted in a confidential way by the bank or its officers concerning the affairs of the bank or its management, and that he acted as attorney for Davis, and not the bank, in the matter of the extension agreement. Whether an attorney who volunteers his services or is employed by private individuals should be permitted to assist the State's attorney in the prosecution of a criminal case rests largely in the discretion of the trial judge, to be decided according to the particular facts and situation in each case, and section 6a of "An act in regard to Attorneys General and State's attorneys," cited by plaintiff in error, does not in anywise limit such discretion. (*Hayner* v. *People,* 213 Ill. 142; *People* v. *Gerold,* 265 id. 448; *People* v. *Hartenbower,* 283 id. 591.) It does not appear that in assisting in the prosecution of this case Black was acting against the interests of clients by whom he had been retained and whose confidence he had received with regard to the facts involved in this case. Plaintiff in error was represented by able counsel, and it does not appear that there was any unfairness to him in allowing Black to assist the State's attorney. It does not appear that there was an abuse of discretion on the part of the court in allowing Black to assist in the prosecution.

It is contended by plaintiff in error that the court erred in admitting in evidence the report made to the Auditor of the condition of the bank as of March 27, 1930, because there was no showing that any entry or item in the report was false. · The report was made on a blank form supplied by the Auditor for that purpose, on which there are printed on one page the items of resources and on another page the items of liabilities to be reported. Following each of the printed items on the form is a blank space to be filled in with the amount in dollars and cents of that item. On the third and fourth pages of the form are schedules to be filled out to give more detailed information concerning certain of the items of resources and liabilities. The heading of the report as made on the form is, "Report of Henry Denhart & Co., located at Washington, in the State of Illinois, transmitted in response to call of the Auditor of Public Accounts and showing condition at the close of business on the 27th day of March, 1930." The total amount of the items of resources as shown by the report is $835,-910.01. The total amount of the items of liabilities as shown by the report is the same. Item 6 of liabilities on the report is as follows:

"6. Bills payable and re-discounts:
    (*a*) Bills payable (schedule E)............$50,000
    (*b*) Re-discounts (schedule F)............ ———
          Total bills payable and re-discounts (6)....$50,000."

Item 10 of liabilities on the report is as follows:

"10. Other liabilities: (Itemize)
    (*a*) Accounts payable ...................$———
    (*b*) ................................... ———
    (*c*) ................................... ———
          Total other liabilities.................———"

On one of the pages of the report is a space headed, "Re-discounts · (schedule F)." In the space below this heading on the report was written by typewriter the word "none." The form of the affidavit to the report is: "I,

H. A. Kingsbury, cashier of the Henry Denhart & Co. Bank, do solemnly swear that the above statement is true to the best of my knowledge and belief, and that the schedules made a part of this report represent correctly the true state of the several matters therein contained."

The contention of plaintiff in error is that the failure to fill in a blank space in the form is not the making of a false statement within the meaning of the statute, and in support of this contention he cites and relies upon the case of *United States* v. *Herrig,* 204 Fed. 124, where it was held that leaving an unfilled blank after the item, "Notes and bills re-discounted," in a report of a national bank to the Comptroller of the Currency, was not a violation of the act of Congress making it an offense to make false entries in such a report even where the bank at the time the report was made had re-discounted bills and notes to the amount of $5000. The court in that case said: "The statute prohibits making false entries. Neither false reports nor false verifications are within the statute. False entries in reports are untrue statements of account by written words, figures or marks made therein." Our statute (sec. 4) reads as follows: "Any officer, director or employee of any bank or association organized under the provisions of this act, who shall willfully and knowingly subscribe to or make or cause to be made any false statement with intent to deceive any person or persons authorized to examine into the affairs of such bank or association, upon conviction thereof, shall be punished by imprisonment of not less than one year or more than ten years in the penitentiary." It is manifest that our statute is broader in its terms than the act of Congress under consideration in the case cited by plaintiff in error, which prohibited making false entries in books or reports, and did not, as does our statute, apply to false statements or the verification of false statements.

It was stipulated that if there was liability of the bank on account of the indorsements on the notes mentioned in

the bill of particulars such liability was not shown in the report to the Auditor. If such liability, if any, should be regarded as a re-discount, as is contended by the People, then the entry of the word "none" in the schedule where information was required to be given concerning re-discounts, was an affirmative false statement. Plaintiff in error argues that the liability, if any, does not properly come under the head of re-discounts, but we do not deem it necessary to discuss that question. If the liability existed and could not properly be regarded as a re-discount it should nevertheless have been shown on the report in item 10, "Other liabilities." The report purported to show the condition of the bank, and if existing liabilities of the bank were not shown therein it was a false statement within the meaning of the statute. The report was made in accordance with the provisions of section 7 of the Banking act, which provides: "Any and all persons and associations organizing under the provisions of this act shall make to the Auditor a report according to the form which may be prescribed by him, verified by oath or affirmation of the president or cashier of such association, which report shall exhibit in detail and under appropriate heads the resources and liabilities of such bank or association at the close of business of any day he may choose," etc. The purpose of a report to the Auditor under section 7 is to inform him of the condition of the bank. As was pointed out by the Supreme Court of the United States in *Cochran* v. *United States,* 157 U. S. 286, 15 Sup. Ct. 628, it is manifest that a report which fails to specify the liabilities which the bank has assumed, and which it might be called upon to discharge, represents very imperfectly the actual financial status of the bank. It is true that if the liability had been shown in the report it would have been necessary to make an entry on the resources side of the statement, under an appropriate heading, of the same amount as was reported as a liability, but if there was a liability on the indorsements

it should have been shown on the report and the necessary entry made on the resources side of the statement in order to make the statement balance. It is our conclusion that a statement purporting to show the condition of a bank is false, within the meaning of our statute, if it contains false entries or if it fails to show all the existing resources and liabilities of the bank. The contention of plaintiff in error that the offense of willfully making a false statement with intent to deceive, defined in section 4 of the Banking act, does not apply to a report made to the Auditor under the provisions of section 7 of the act, was held to be without merit in *People* v. *Mueller, supra.*

It is contended by plaintiff in error that the indorsement of the notes was made without consideration, and that, therefore, there was no liability of the bank on the indorsements. The contention of the People is that when the notes were sold there was an agreement on the part of the bank to re-purchase them should the purchasers be dissatisfied or desire to sell them, and that the notes were indorsed and the indorsements accepted in place of and in extinguishment of the obligation of the bank to re-purchase the notes.

Joseph D. Conrard testified in substance as follows: He transacted business at the Denhart bank for fifteen years and bought "real estate loans" at the bank many times. Some time before March 1, 1929, he and his wife, Anna J. Conrard, went to the bank and had a conversation with Kingsbury. Witness asked Kingsbury if he had a "good mortgage" for sale, and Kingsbury said "yes." Witness said that he and his wife and Bertha Wiltz, his sister-in-law, had money to invest. Kingsbury told witness about the Davis notes, secured by the trust deed on the land that had been sold to the corporation and of the buildings being erected on the land by the corporation, and said that he considered it a good loan. Kingsbury said that "if I wasn't satisfied he would pay me the money." About

March 9, 1929, witness returned to the bank for the notes and "got" notes Nos. 7 and 17 for himself and notes Nos. 2 and 6 for his wife. The notes were sent to them by mail shortly thereafter. The notes were not indorsed by the bank when they received them. About February 25, 1930, witness went to the bank with his and his wife's notes and told Kingsbury that he thought he ought to have the indorsement of the bank on the notes; that he wanted Kingsbury either to pay him the money for the notes or indorse them. Kingsbury said he would have to see Denhart about indorsing them. Kingsbury went out and after he returned said, "Well, I will sign up," and then indorsed the notes by writing across the back of each one, "Henry Denhart & Company." He also promised to indorse Mrs. Wiltz's notes. A week or ten days later witness again went to the bank and asked Kingsbury to put his name on the indorsements on the notes, and Kingsbury, underneath the bank's name on the back of each note, wrote, "H. A. Kingsbury, Cash."

Anna J. Conrard testified that when she and her husband, before March 1, 1929, talked to Kingsbury about buying the Davis notes, he said that if they were not satisfied or the notes were not good "they would give us our money back."

Bertha Wiltz testified that Joseph D. Conrard acted as her agent in the purchase by her of notes Nos. 8 and 9 and in procuring the indorsement of the bank thereon. Over objection of plaintiff in error she testified that about seven years before the trial, and at least six years before she bought notes Nos. 8 and 9 in March, 1929, she had a conversation at the bank with Kingsbury about buying notes secured by real estate mortgages from the bank, in which he told her that if at any time she wanted her money on any notes so purchased, all she had to do was give the bank about thirty days' notice and the bank would see that she got her money. She further testified that after February 25, 1930, she sent her notes Nos. 8 and 9 to the bank and

in a few days received them back with the bank's indorsement on each of them.

It is not contended by the People that the report made to the Auditor was false in that there was not shown therein as a liability the obligation of the bank to re-purchase the notes. By the bill of particulars the People were limited to a showing of liability on the notes on account of the bank's indorsements on them. (*People* v. *Ervin,* 342 Ill. 421; *McDonald* v. *People,* 126 id. 150.) The notes were not indorsed by the bank at the time they were sold and delivered to the purchasers, and since they were made payable to the order of Henry Davis and were indorsed by him in blank it was unnecessary that the bank indorse them to pass title thereto to the purchasers. (Negotiable Instruments law, secs. 9, 34.) There was no liability of the bank on the indorsements unless there was consideration for such indorsements. (*Joslyn* v. *Collinson,* 26 Ill. 61; *Parkhurst* v. *Vail,* 73 id. 343; 8 Corpus Juris, sec. 344, pp. 211, 212; 3 R. C. L. sec. 123, p. 928; 74 A. L. R. (Ann.) p. 1097.) It is not contended that there was any agreement on the part of the holders of the notes, at the time the indorsements were made, to forbear for any period of time from enforcing the obligation of the bank to re-purchase the notes. The evidence shows no such agreement, and if, after the indorsements were placed on the notes, the prior obligation to re-purchase the notes remained in force there was no consideration for the indorsements. *Gates* v. *Hackethal,* 57 Ill. 534; 46 Corpus Juris, sec. 34, p. 592.

The case was submitted to the jury by the People on the theory that the indorsements were made and accepted in place of and in extinguishment of the obligation of the bank to re-purchase the notes. The only evidence to show that there was an agreement between the holders of the notes that the indorsements should be taken in place of the obligation to re-purchase them is the bare statement of Conrard that at the time he asked that the notes be indorsed

he said to Kingsbury that he wanted him either to pay the money for the notes or indorse them. Had a jury in a civil case found that this evidence did not prove that the parties intended, when the notes were indorsed, that the bank's obligation to re-purchase the notes was thereby extinguished, the court would not have been justified, under the decisions of this court, in setting aside the verdict. (*Cheltenham Stone Co.* v. *Gates Iron Works,* 124 Ill. 623; *Hayward* v. *Burke,* 151 id. 121; *Walker* v. *Wood,* 170 id. 463; *Henry* v. *Caruthers,* 196 id. 136.) It was necessary for the People to prove that there was a liability of the bank on the indorsements on the notes to show that the report to the Auditor was false, as was alleged in the indictment. That the statement made was false was one of the essential and material elements of the crime alleged in the indictment. The burden was on the People to prove all of the material and essential facts constituting the crime beyond a reasonable doubt. (*People* v. *Cramer,* 298 Ill. 509.) The proof in this case does not establish beyond a reasonable doubt that there was a liability on the indorsements on the notes, and does not, therefore, establish the guilt of the plaintiff in error of the crime charged in the indictment beyond a reasonable doubt.

Other errors are assigned and argued but it is unnecessary to consider them.

In the closing arguments for the People improper remarks tending to appeal to the passion and prejudice of the jurors were made and objections thereto were sustained. An examination of the whole record convinces us that the verdict of the jury was the result of passion and prejudice rather than of a fair and impartial consideration of the evidence, and since, as we have shown, the evidence does not establish the guilt of plaintiff in error of the crime charged in the indictment beyond a reasonable doubt, the judgment of the circuit court is reversed.

*Judgment reversed.*