Argued July 10, affirmed July 31, rehearing denied September 25, 1928.

## STATE *v.* CLARENCE BRAZELL.

(269 Pac. 884.)

For appellant there was a brief over the names of *Messrs. Collier, Collier & Bernard,* with oral arguments by *Mr. Wm. G. Smith* and *Mr. E. F. Bernard.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. John Mowry,* Deputy District Attorney, with oral

arguments by *Mr. George Mowry* and *Mr. Leon Behrman,* Deputy District Attorneys.

BELT, J.— ██ Defendant was convicted, under Section 2099, Or. L., of having committed an act of sexual perversity. The indictment, so far as material, is as follows:

"The said Clarence Brazell on the third day of January A. D. 1928, in the County of Multnomah and State of Oregon, then and there being did then and there unlawfully and feloniously commit an act of sexual perversity with one Gordon Erickson, also known as Gordon Franks, who was then and there a male person over the age of fourteen years and under the age of eighteen years, by then and there wilfully, knowingly and intentionally placing the hands of him, the said Clarence Brazell, who was then and there a male person over the age of twenty-one years, upon the private parts of the said Gordon Erickson, also known as Gordon Franks, and by then and there wilfully, knowingly and intentionally performing, practicing and completing an act of masturbation upon the said private parts of the said Gordon Erickson, also known as Gordon Franks."

There is no merit in the contention that the indictment is vulnerable to demurrer. It was certainly within the power of the legislature to declare acts of sexual perversity criminal. Practicing masturbation by a man upon a boy is an act of sexual perversity within the ordinary meaning and acceptation of the words.

██ The serious question on appeal is whether the defendant was convicted on the uncorroborated testimony of an accomplice. We inquire whether there was any evidence, independent of that of the accomplice, which, in the language of Section 1540, Or. L.,

tends to connect the defendant with the commission of the crime alleged in the indictment. It need not be direct and positive, but may be circumstantial in character. Such crimes are ordinarily not committed where they can be observed. The jury is permitted to draw reasonable inferences from facts proven. The weight of the corroborating evidence is, of course, for the jury. It is only when there is no evidence tending to connect the defendant with the commission of the crime that a question of law arises upon motion for directed verdict of acquittal. The law applicable herein has been stated many times by this court and we see no need for restatement: *State* v. *Brake,* 99 Or. 310 (195 Pac. 583), and cases therein cited. In 1 R. C. L., page 170, it is said:

"Where it is objected that there is no corroboratory evidence tending to connect the defendant with the commission of the offense, it has been stated that the rule of appellate courts to test the legality of the verdict is to take the strongest statement of the case against the defendant that the evidence would warrant the jury in finding if the facts were specially found."

There is evidence of several improper acts occurring between the defendant and Gordon Franks, but the state elected to stand on a particular act of masturbation alleged to have been practiced upon the boy, by the defendant, in the Queen Louise Apartments in the City of Portland, some time between November 21, 1927, and January 4, 1928.

Brazell is a bachelor about forty years of age and for many years has been engaged in the insurance business. The boy, at the time of the alleged commission of the crime, was about fifteen years of age. There is testimony as to an intimate association be-

tween defendant and the Franks boy, extending over a period of about two years. The first meeting between them took place in the spring of 1926 at Oswego Lake, where the defendant maintained a summer cottage. Gordon Franks, who lived near by, often visited at the home of Brazell, as it seems to have been the custom of many other boys of similar age to do. The Franks boy would often miss his classes in school to go to the home of Brazell. The association between them was of such an intimate nature that it caused the stepfather of the boy to warn the defendant that he must leave the boy alone. Notwithstanding this complaint, we find the intimate association continued. There is evidence, other than that of the accomplice, that the defendant made presents to the Franks boy. Max Hochgraef, a boy about fifteen years of age, testified that, between Thanksgiving, 1927, and January 5, 1928, he saw Gordon Franks in the Queen Louise Apartments "approximately about ten times." Other witnesses gave testimony as to the association. The jury unquestionably was warranted, considering the disparity in ages of the defendant and the boy, and their association, in drawing the inference that there was an unnatural interest manifested by Brazell in this boy. Is it not strange that defendant, who was a successful and active business man, would leave his office many times in the afternoon and go to his home, which was a sort of rendezvous for idle boys? Why was it that he persisted in his association with Gordon Franks after the emphatic protest of the stepfather? Gordon Franks testified that he slept with the defendant in the Queen Louise Apartments between Thanksgiving and Christmas, 1927, and that

the act of masturbation was performed upon him by the defendant after they had gone to bed for the night. He fixed the hour at about 12:30 A. M. In corroboration, the record discloses the following testimony of Max Hochgraef:

"Q. Do you remember a particular occasion late in December of 1927 when Gordon stayed there all night? A. Yes.

"Q. Where were you sleeping that night? A. I was sleeping in the kitchenette, or breakfast nook.

"Q. Where was Gordon sleeping? A. He slept in the bed with Mr. Brazell.

"Q. And you say that was late in December of 1927? A. Yes sir, sometime around there, yes.

"Q. I see. Well, after they retired state the condition of the room as to whether or not it was lighted or in darkness. A. It was dark.

"Q. And did you hear anything there? A. Well, I heard the bed squeak and heard Gordon talk. I don't know what he said.

"Q. Well, now, just describe this bed squeak. Was it one squeak, or was it a number of intermittent, steady squeaks? A. There was a number of squeaks there. * *

"Q. You heard those squeaks? A. Yes.

"Now, describe them with more detail to the jury, then. A. Well, it sounded as if a person put his hand on the bed and shake it, not hard, but rather softly.

"Q. And how long did these squeaks keep up? A. I don't know just how long.

"Q. Well, how long approximately? A. Oh, a minute or two, probably three."

The testimony of Hochgraef is undoubtedly some evidence tending to connect the defendant with the commission of the crime. If this evidence is not sufficient to meet the requirement of the statute, then few crimes of this nature would ever be established.

If Hochgraef had been in the very room in which Brazell and the Franks boy slept it is doubtful if he could have given any more convincing testimony.

Other evidence might be recited to substantiate the conclusion that there is sufficient corroboration under the statute, but we think that above stated warranted the trial court in submitting the cause to the jury.

The judgment of conviction is affirmed.

AFFIRMED. REHEARING DENIED.