Argued March 23; reversed June 21, 1932

# MORELAND THEATRES CORPORATION *v.* PORTLAND MOVING PICTURE MACHINE OPERATORS' PROTECTIVE UNION, LOCAL NO. 159 ET AL.
## McCREDIE *v.* SAME
## GRANADA THEATRE CORPORATION *v.* SAME

(12 P. (2d) 333)

*John F. Logan* and *John W. Kaste,* both of Portland, for appellants.

*E. C. Bronaugh, Jr.,* and *Wilber Henderson,* both of Portland, for respondents.

RAND, J.   Upon motion of the parties, these appeals by plaintiffs separately from decrees entered in three different suits have been consolidated in this court and have been argued and submitted together. Although there is a different plaintiff in each suit, the relief prayed for and denied by the court below was an injunction to restrain the defendants from picketing theaters separately owned by plaintiffs. The defendants are the same in all suits. They are two voluntary, unincorporated labor organizations and their officers, the latter being sued both individually and as such officers. There is no substantial difference, however, in the issues made by the pleadings nor in the proofs adduced in support thereof and, hence, our decisions must be the same in each case.

The evidence shows that up to the time of the final hearing in this court on March 23, 1932, from September 16, 1929, the defendants have caused three moving picture theaters separately owned and operated by plaintiffs in outlying districts in the city of Portland to be continuously picketed during all the time said theaters have been opened for business, the hours being from 7 p. m. to 11 p. m. on week days and from 2 p. m. to 11 p. m. on Sundays and holidays. This picketing consisted of one picket being posted at the entrance of each theater who patrolled back and forth in front of said entrance carrying a banner or sash bearing the inscription "Unfair to organized labor." The evidence shows that such picketing has resulted in a loss of patronage to plaintiffs and in damage to their business.

The controversy between the plaintiffs and the defendants grew out of the following facts: Until some time in the spring or summer of 1929, each theater employed one union operator to operate its projection machines and paid him $45 per week which was the union scale of wages for operators employed in theaters displaying, as plaintiffs were, silent pictures only. Desiring to change from silent to sound pictures, plaintiffs installed sound attachments or sound projection machines, the evidence does not show which, and thereafter displayed sound pictures. A rule of the defendant union provides that in the operation of sound picture machines two operators must be employed and be present in the projection booth at all times when the machines are being operated, and that each should receive $60 or slightly more per week. The rule, however, provides that the owner of the theater, but no other person, may take the place and do the work of one of such union operators and when that is done he also must be in the booth at all times. For a while plaintiffs complied with this rule by employing one union operator at each theater, paying the union scale and working with him in the booth. This arrangement was not satisfactory to plaintiffs. They claimed that their business would not justify the employment of two operators and offered to employ one union operator and pay the union scale if he would work alone. This proposed action, being contrary to the union rule, was, of course, refused and this was followed by several conferences between plaintiffs and the officers of the union and, no adjustment of the matter being reached, the picketing was immediately commenced and has been continued ever since.

Plaintiffs testified that the union operators voluntarily quit their employment while defendants testified

that the operators were discharged. However that may be, their places were all immediately filled by the employment of one non-union operator in each theater. Since then the work of operating the machines has been done by one non-union operator at each theater and he has been paid $45 per week.

After these theaters had been picketed for about eight months, plaintiffs each filed a complaint praying for an injunction. The defendants appeared and filed answers in which they admitted that they had caused the picketing, and alleged in justification thereof the facts above stated. In addition thereto they alleged:

"That on said 16th day of September, 1929, and continuing to the present time, there was and has been a dispute or controversy between plaintiff and the defendant, Moving Picture Operators' Protective Union, Local 159, involving the scale of wages to be paid by plaintiff to the operator employed at his said theater, and that said controversy was caused by and had its origin in plaintiff's arbitrary demand for a reduction in the wage scale from $60.00 per week to $45.00 per week, and by plaintiff's action in discharging said union operator as aforesaid."

■ Upon the trial, however, although not pleaded, some evidence was offered by defendants tending to show that some person claiming to have authority to represent plaintiffs entered into a contract with the defendant union No. 159, agreeing that these theaters should employ union operators only and abide by union rules. The authority of the supposed agent to bind plaintiffs and the validity of the agreement itself are disputed by plaintiffs. The contract, however, was offered in evidence and is here for examination. Without considering the question of the validity of a contract to employ union labor to the exclusion of all other persons, we are of the opinion that the party contracting

on behalf of the plaintiffs had authority to contract for at least two of the plaintiffs, but the contract has long since expired and, if it could be held to be a justification for the picketing when commenced, as to which we express no opinion, it can afford no justification at this time, nor could it at the time these cases were decided by the court below on March 6, 1931.

There is no evidence nor contention made that the picketing has not at all times been peaceable nor that it has at any time been accompanied with threat of physical injury or violence and, because thereof, defendants contend that the immunity against the issuance of an injunction granted by section 49-901 to section 49-906, Oregon Code 1930, applies and, therefore, the ruling of the court below denying injunctive relief to plaintiffs was proper. So far as applicable to this question, the statute provides:

"No restraining order or injunction shall be granted by any court of this state, or any judge or judges thereof in any case between an employer and employe or between employer and employe or between employes or between persons employed and persons seeking employment, involving or growing out of a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right of the party making the application, for which injury there is no adequate remedy at law, and such property or property rights must be described with particularity in the application, which must be in writing and sworn to by the applicant or his agent or attorney." Section 49-902.

"No restraining order or injunction shall prohibit any person or persons, whether singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor; or from recommending, advising or persuading others by peaceful means so to do; or from attending at any place where

any person or persons may lawfully be, for the purpose of peacefully obtaining or communicating information, or from peacefully persuading any such person to abstain from working; or from ceasing to patronize any party to such dispute; or from recommending, advising or persuading others by peaceful or lawful means so to do; or from paying or giving to, or withholding from, any person engaged in such dispute, any strike benefits or other moneys or things of value; or from peaceably assembling in a lawful manner, and for lawful purposes; or from doing any act or thing which might lawfully be done in the absence of such dispute by a single individual; or shall any of the acts specified in this section be considered or held to be illegal or unlawful in any court of the state." Section 49-903.

Plaintiffs contend that if the provisions of the two sections just quoted should be so construed and applied to the facts proven as to deprive plaintiffs of their right to an injunction against the continuance of the acts complained of then the statute violates both the due process and the equal protection clauses of the fourteenth amendment to the federal constitution.

■ The constitutionality of a statute not plain upon its face must be determined in the light of the construction placed upon it and the application made of it to a given state of facts. Hence, the same statute, if given one construction and one application to a given state of facts, may be constitutional, while the same statute, if given another construction and differently applied to the same facts, may be unconstitutional. This distinction was recognized in *Greenfield v. Central Labor Council*, 104 Or. 236 (192 P. 783, 207 P. 168), where, in holding that the statute now under consideration was constitutional, the court said: "If construed to be a justification of the manner and method of picketing in the case at issue," the statute could not be held to be

valid. Again, our statute was copied from the Act of Congress approved October 15, 1914, 38 Stat. at Large, chap. 323, generally referred to as the Clayton Act. These identical provisions were also enacted by the legislature of the state of Arizona and were so construed and applied by the supreme court of that state in *Truax v. Corrigan,* 20 Ariz. 7 (176 P. 570), that, upon writ of error to the supreme court of the United States, the decision of the supreme court of Arizona was reversed, 257 U. S. 312 (42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375), and the statute, as so construed and applied to the particular facts of that case, was declared to be unconstitutional, not because the wording of the statute, if it had been differently construed and applied, would have made it unconstitutional but because the federal courts being bound by the construction placed upon a state statute by the highest court of the state, the construction and application so given to the statute by the supreme court of Arizona made it unconstitutional. The language of the statute, however, is plain and, when properly construed and applied, the statute is valid.

■ In conducting their theaters, these plaintiffs were transacting a lawful business. The right to transact such business is a property right, the exercise of which without unlawful injury or interference by others is protected both by the federal constitution and by the constitution of this state: *Duplex Printing Press Co. v. Deering,* 254 U. S. 443 (41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196); *Truax v. Corrigan,* already cited; *Greenfield v. Central Labor Council,* supra; *Longshore Printing Co. v. Howell,* 26 Or. 527, 546 (38 P. 547, 28 L. R. A. 464, 46 Am. St. Rep. 640).

■ The same right to operate his business without unlawful interference extends to an employer as much as

it does to any other person: *Hitchman Coal & Coke Co. v. Mitchell*, 245 U. S. 229 (38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461), *King v. Weiss & Lesh Co.*, 266 F. 257, 260; *Quinlivan v. Dail-Overland Co.*, 274 F. 56.

■ It has always been a basic rule of equity that the issuance of an injunction should be restricted to the protection of property and to prevent wrongs for which no adequate remedy is provided by law. The statute gives effect to that principle and grants no immunity from the issuance of an injunction when the injury or threatened injury is to property or a property right unless in such case there is an adequate remedy provided by law. This adds no new principle to the law nor does it in any manner change the law as it had theretofore existed when properly applied. The statute grants no immunity from the issuance of an injunction in any proper case where the injury complained of is an irreparable injury to property or to a property right unless it can be shown that an adequate remedy for such injury is provided by law. The injury resulting to the business of these plaintiffs from the picketing complained of is a material, constant, repeated and continuing loss of patronage and, hence, the damage is irreparable and entitles plaintiffs to an injunction unless the picketing was and is lawful.

■ Defendants contend that since the picketing was peaceful and took the form of persuasion only, no restraining order can be issued under section 49-903 prohibiting the defendants from peacefully persuading any person to cease patronizing these theaters, or the pickets from peacefully assembling in a lawful manner at the entrances thereof, or from doing any act or thing which might lawfully be done in the absence of a dis-

pute by a single individual. Sections 49-902 and 49-903 are combined in and form section 20 of the Clayton Act. In the Duplex case, already cited, the two paragraphs, which together form the sections above quoted, were construed together and it was held that the restraint against the issuance of a restraining order prohibiting the conduct specified in the last section ''are to be read in the light of the context and mean only that those acts are to be so held when committed by parties concerned in a 'dispute concerning terms or conditions of employment'.''

Under that construction, which we approve and adopt as the true construction to be placed upon our own statute, the prohibition of the statute against the issuance of an injunction applies only when there is a ''dispute concerning terms or conditions of employment,'' and, in the absence of some actual bona fide dispute existing at the time concerning terms or conditions of employment, picketing, whether peaceful or otherwise, is unlawful: *Quinlivan v. Dail-Overland Co.,* supra.

We think that under the great weight of authority picketing is regarded as a legitimate means of economic coercion if it is confined to persuasion and is free of molestation or threat of physical injury or annoyance. But it is a privilege which may be invoked only when some lawful justification for its exercise exists and by lawful justification is meant the bona fide exercise of some right. See Oakes on Organized Labor and Industrial Conflicts, p. 619, section 412. As a general rule, the courts have held that picketing, in the absence of a lawful strike, is unlawful and such, we understand, is the rule in Massachusetts, and that seems to have been the rule followed by this court in

the Greenfield case already cited. The New York cases, however, now hold to the contrary. "Picketing," said the court in *Exchange Bakery & Restaurant, Inc., v. Rifkin,* 245 N. Y. 260, 263 (157 N. E. 130), "Without a strike is no more unlawful than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured." See Frankfurter and Green, The Labor Injunction, p. 31, and cases there cited. As was said by Mr. Justice Brandeis in *Dorchy v. Kansas,* 272 U. S. 306 (47 S. Ct. 86, 71 L. Ed. 248):

"Neither the common law, nor the Fourteenth Amendment confers the absolute right to strike. * * * The right to carry on business—be it called liberty or property—has value. To interfere with this right without just cause is unlawful. The fact that the injury was inflicted by a strike is sometimes a justification. But a strike may be illegal because of its purpose, however orderly the manner in which it is conducted."

■ Regardless of what may be the weight of authority upon the question of whether picketing without a strike is lawful or unlawful, it is clear that before picketing, in the absence of a lawful strike, can be lawful there must be some actual bona fide dispute concerning terms or conditions of employment and that, in the absence of both, there can be no lawful justification for picketing in any case. Again, picketing is unlawful when the primary object of the picketing is not to benefit the combination but to injure the business of the employer or the person picketed. See *Hitchman Coal & Coke Co. v. Mitchell,* supra.

"Where the strike itself is for an unlawful purpose, as for instance to injure another's business without pecuniary benefit to the actors, any picketing, even

though of a peaceable character to aid the strike by persuading workmen to quit work is unlawful.'' Martin, The Modern Law of Labor Unions, sec. 167.

As said by Mason in Organized Labor and the Law, p. 93:

''All of these instances point to the conclusion that there can be no lawful picketing in pursuit of an unlawful object, and on proof of such an object there need be no investigation into the manner in which the picketing was conducted, for an unlawful object is, of itself, sufficient to condemn the combination as a conspiracy.''

Again, the same author says:

''Obviously, there could be no lawful picketing in pursuit of an unlawful strike, or any other unlawful object, for in that case the union would be necessarily actuated by an improper motive.''

The primary object and purpose of this picketing was not to benefit the union, but to injure the business of the plaintiffs. A combination formed for the purpose of injuring the business of another is in law malicious and renders anything done in furtherance thereof unlawful, even if the thing done is itself lawful. There was only one union employee at each theater and he had either been discharged or had quit of his own accord before this picketing was commenced. In the absence of contract for a specified term of employment, plaintiffs had a right to discharge the union operators and the operators likewise had a right to quit their services whenever they pleased. Every employer has the right to discharge a union man and employ a non-union man, and where but one man is employed, and he a union man, no lawful right to strike in such a case could arise, and if it was attempted there could be no legal justification for it for no one's rights

could be prejudiced. A strike is a combination to obtain higher wages, shorter hours of employment, better working conditions or some other concession from their employer by the employees stopping work at a preconcerted time. It involves a combination of persons and not a single individual. Before either striking or picketing can become lawful, the motive for calling the strike or ordering the picketing must be lawful. No such motive could or did exist in this case and the purpose for which the picketing was conducted must have been improper because the law presumes that a person intends the ordinary consequence of his own voluntary acts: Section 9-807, sub. 3. The natural and inevitable consequence of this picketing was damage to plaintiffs' businesses and if any possible benefit could arise therefrom to the members of the union it could only arise after compelling plaintiffs, against their will, to accede to the demands of the union or fail in business. This possible future benefit to defendants is too indirect and remote to justify their conduct in picketing plaintiffs' premises.

Defendants, however, contend that the constitutional guaranty of free speech and free press and the right of peaceable assembly justify their conduct and will protect them from the issuance of an injunction restraining any further picketing of these premises. They also contend that, if the acts done by the picketers are legal when done by an individual, they are not unlawful when done by a combination of individuals. Both of these contentions are true only when the combination is formed for a lawful purpose. If the combination is formed for an unlawful purpose, then it becomes a conspiracy and any act done in furtherance of it, no matter how innocent that act may be, the doing of it is unlawful.

48

In the Duplex case, supra, the court said:

"The accepted definition of a conspiracy is a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. * * * If the purpose be unlawful it may not be carried out even by means that otherwise would be legal; and although the purpose be lawful it may not be carried out by criminal or unlawful means."

From this it follows as a necessary deduction that when the purpose of the combination is illegal every act done in furtherance of it is illegal even though the act may be innocent in itself. When an act would be lawful if done by an individual it will be lawful if done by a combination provided there is no unlawful object in view, but such combinations are unlawful, though the acts when done by an individual would be innocent, when the acts are committed with malice, i. e., with the intention to injure another or the public without just cause or excuse. And just cause or excuse exists only where the injury inflicted is the means to some end legitimately desired, and incidental thereto, and is not the result of a specific intent and immediate purpose of injury to others that benefit may ultimately come to the members of the combination. It is entirely wanting, when the immediate purpose of the combination is to inflict injury on others, and the benefit, if any, to result to the combination is indirect or remote: Martin on the Modern Law of Labor Unions, section 88.

In *Aikens v. Wisconsin,* 195 U. S. 194, 206 (25 S. Ct. 3, 49 L. Ed. 154), the court said:

"* * * The most innocent and constitutionally protected of acts * * * may be made a step in a criminal plot, and if it is a step in a plot neither its innocence nor the constitution is sufficient to prevent the punishment of the plot by law."

For these reasons, the three decrees appealed from are each reversed and a decree in each suit will be entered here granting to the plaintiffs the relief prayed for in their complaints, but without costs to either party upon this appeal or in the court below.

BEAN, C. J., did not participate in this opinion.

ROSSMAN, J., concurs in the result.

———

BELT, J. Dissenting. In my opinion the record discloses beyond question that a bona fide dispute existed between the labor unions and the theaters involved, "concerning terms or conditions of employment." Hence under section 49-903, Oregon Code 1930, —the constitutionality of which has been upheld by this court (*Greenfield v. Central Labor Council,* 104 Or. 236 (192 P. 783, 207 P. 168)—no restraining order "shall prohibit any person or persons, whether singly or in concert  *   *   *  from recommending, advising or persuading others by peaceful or lawful means" not to patronize any party to such dispute. The method of picketing in these cases was peaceful and took the form of merely persuading patrons of the theaters that the cause of the labor unions was just. It is not for this court to say who was right in the controversy. This court has previously recognized that there may be lawful picketing. Does the exercise of this lawful right become unlawful merely through lapse of time? In other words, are we to say to the labor unions, "You may picket and engage in peaceful methods of persuasion for a month, but you may not do so for a year"? The dispute still exists. If not, when was it terminated? It is immaterial that the theaters may have sustained damages incidental to the exercise of such rights. Neither is it material that the theaters

no longer have in their employment union workers. This contention was made in *Greenfield v. Central Labor Council,* supra, and this court said:

"Because a strike was declared and the union employees walked out, plaintiff claims that the relation of employer and employee ceased to exist; that there was no longer any 'dispute concerning terms or conditions of employment,' wherefore chapter 346, Laws of 1919, would not apply. Counsel have not cited and we have not found any authority which sustains that contention, and where that question has been decided the authorities are against it."

The right of picketing does not, in my opinion, depend upon the existence of a strike. The Greenfield case does not so hold.

For the reasons thus briefly stated I am obliged to dissent from the majority opinion.