Argued February 26; affirmed May 28; rehearing denied
September 3, 1946

# STATE *v.* ANTHONY
### (169 P. (2d) 587)

Dal M. King, Judge.

*Claud H. Giles,* of Coos Bay, and *Wm. P. Lord,* Portland, for appellant.

*Ben C. Flaxel,* of North Bend, District Attorney for Coos County, Oregon; *Fred A. Miller,* of Salem, Assistant Attorney General, (George Neuner, Attorney General of Oregon, on the brief), for respondent.

BRAND, J.

The indictment charges that

"The said Milton Scott Anthony on the 20th day of November, 1944, in the County of Coos and State of Oregon then and there being, did then and there unlawfully and feloniously commit an act of sexual perversity upon another, to-wit: One Irma Smith, a female person, by then and there willfully, knowingly, intentionally and by force and violence inserting a blunt object, a more particular description thereof being to the Grand Jury unknown, into the anal opening and through the wall of the rectal portion of the bowel and the vagina

of her, the said Irma Smith, with intent by him, the said Milton Scott Anthony, to thereby then and there perform and commit an act of sexual perversity upon her * * *."

The statute under which the indictment was drawn reads as follows:

"If any person shall commit sodomy or the crime against nature, or any act or practice of sexual perversity, either with mankind or beast, or sustain osculatory relations with the private parts of any man, woman or child, or permit such relations to be sustained with his or her private parts, such person shall upon conviction thereof, be punished by imprisonment in the penitentiary not less than one year nor more than fifteen years." O. C. L. A. § 23-910.

The evidence is not discussed in the briefs, and we find no occasion to discuss it here. It is sufficient to say that from the evidence the jury would have been warranted in returning a special verdict to the effect that on the 20th day of November, 1944, in the County of Coos in the State of Oregon, the defendant did willfully, knowingly and intentionally and by force and violence insert a blunt object into the anal opening and through the wall of the rectal portion of the bowel and the vagina of Irma Smith, a female person, and that the act was committed in the course of a drunken debauch without justification or excuse, with evil intent and for the abnormal sexual satisfaction of the actor.

The first question involved relates to the constitutionality of that portion of O. C. L. A. § 23-910 under which the indictment was drawn. The original statute was enacted in 1864 and provided:

"If any person shall commit sodomy or the crime against nature, either with mankind or beast,

such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one year nor more than five years." L. O. L. § 2099. [L. 1864; D § 639.]

The present statute, O. C. L. A. § 23-910, supra, is the result of amendment by the Laws of 1913, Chapter 21. There have been no other amendments.

■ O. C. L. A. § 23-910, supra, embraces three separate prohibitions. The first clause of the statute prohibits sodomy or the crime against nature, which was the only offense proscribed in the original act of 1864, supra. Being a crime known to the common law, further statutory definition of the word "sodomy" was unnecessary. "In the absence of provision to the contrary, a statute may punish an offense by giving it a name known to the common law, without further defining it, and the common-law definition will be applied * * *." 22 C. J. S., Criminal Law § 24, p. 70. Id. § 21, p. 69. *Multnomah Co. Fair Ass'n. v. Langley,* 140 Or. 172, 175, 13 P. (2d) 354; *State v. Ayers,* 49 Or. 61, 88 P. 653, 10 L. R. A. (N.S.) 992, 124 Am. St. Rep. 1036.

The nature of the crime has been adequately defined by the decisions of this court. *State v. Weitzel,* 157 Or. 334, 69 P. (2d) 958; *State v. Young,* 140 Or. 228, 13 P. (2d) 604; *State v. Start,* 65 Or. 178, 132 P. 512, 46 L. R. A. (N. S.) 266. And see *State v. Poole,* 59 Ariz. 44, 122 P. (2d) 415.

Part two of the present statute prohibits any act or practice of sexual perversity either with mankind or beast. Part three relates specifically to certain osculatory relations which this court has held were embraced within the prohibition of the sodomy statute prior to its amendment.

■ The act charged in this indictment is not embraced within the prohibition of either part one or part three of O.C.L.A. § 23-910, since no carnal copulation is charged. This conviction can be upheld, if at all, only under that portion of the statute which provides that "if any person shall commit * * * any act * * * of sexual perversity * * * with mankind * * * such person shall upon conviction thereof, be punished * * *." The difficulty arises in the fact that the foregoing portion of the statute, unlike part one thereof, contains no language descriptive of any offense known to the common law. In determining the validity of the statute prohibiting acts of sexual perversity, cognizance must be taken of the fundamental principle that in the creation of an offense which was not a crime at common law a statute must be sufficiently certain to show what the legislature intended to prohibit.

"A valid criminal law must definitely show with reasonable certainty what acts or omissions the lawmaking body intended to prohibit and punish: 1 Cyclopedia of Criminal Law, Brill, § 62. But reasonable definiteness in view of the conditions is all that is required." *State v. Bailey,* 115 Or. 428, 432, 236 P. 1053.

*State of Oregon v. Mann,* 2 Or. 238; *Ex Parte Lockett,* 179 Cal. 581, 178 P. 134; *Guetling v. State,* 198 Ind. 718, 153 N. E. 765; 14 Am. Jur., Criminal Law § 19, p. 773.

■ The "void for vagueness" doctrine was not in origin dependent upon the provision of any written constitution. It stems from the ancient common law. As said by Brewer, J., in *Tozer v. United States:*

"The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty. In the case of Railway Co. v. Dey, 35

Fed. Rep. 866, 876, I had occasion to discuss this matter and I quote therefrom as follows:

" ' * * * In Dwar. St. 652, it is laid down 'that it is impossible to dissent from the doctrine of Lord Coke that the acts of parliament ought to be plainly and clearly, and not cunningly and darkly, penned, especially in legal matters.' See, also, U. S. v. Sharp, Pet. C. C. 122; The Enterprise, 1 Paine, 34; Bish. St. Crimes, § 41.' " *Tozer v. United States*, 52 F. 917, 919, 920.

See also *The Enterprise*, 8 Fed. Cas. No. 4499, p. 732. Note 29 Calif. L. Rev. 548.

In *Patten v. The Aluminum Castings Co.*, 105 Ohio St. 1, 136 N. E. 426, the plaintiff sued his employer for common-law negligence notwithstanding the fact that the employer was operating under the Workmen's Compensation Act. Plaintiff relied (1) on the provision of a statute which saved to him his common-law rights if the injury arose "from failure of the employer to comply with any lawful requirement," etc., and (2) on a second statute under which the negligent furnishing of "unsuitable or improper" scaffolding was made a crime. It was held that the second statute did not lay down "any lawful requirement" by reason of its uncertainty. The Constitution of Ohio, Article IV, § 2, required the concurrence of six out of seven judges before a statute could be declared unconstitutional. The decision in the Patten case was by a bare majority. Therefore, it appears clear that the practical nullification of the indefinite statute was accomplished by some process of construction and was not based on constitutional grounds. See Aigler, Legislation in Vague or General Terms. 21 Mich. L. Rev. 831, 832.

■■ It appears that the "void for vagueness" doctrine originated in criminal cases and grew out of the

concept that criminal statutes are to be strictly construed in favor of the accused. For this common-law doctrine, however, a constitutional basis has been found by the Supreme Court of the United States. In determining the constitutionality and validity of the statute in the case at bar, we must therefore refer not only to the laws of Oregon but also to constitutional decisions of the Federal Supreme Court.

In considering the validity of penal provisions in a state statute which prohibited "the production of petroleum in such a manner or under such conditions as to constitute waste," and defined "waste to include, in addition to its ordinary meaning, economic waste, underground waste, surface waste, and waste incident to the production in excess of transportation or marketing facilities or reasonable market demands," the United States Supreme Court said:

> "In Connally v. General Constr. Co., 269 U. S. 385, 391, 70 L. ed. 322, 328, 46 S. Ct. 126, this court has laid down the rule that governs here: 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'
>
> "The general expressions employed here are not known to the common law or shown to have any meaning in the oil industry sufficiently definite to enable those familiar with the operation of oil wells to apply them with any reasonable

degree of certainty. The meaning of the word 'waste' necessarily depends upon many factors subject to frequent changes. * * *

"In the light of our decisions, it appears upon a mere inspection that these general words and phrases are so vague and indefinite that any penalty prescribed for their violation constitutes a denial of due process of law. It is not the penalty itself that is invalid but the exaction of obedience to a rule or standard that is so vague and indefinite as to be really no rule or standard at all." *Champlin Refining Company v. Corporation Commission*, 286 U. S. 210, 76 L. ed. 1062, 52 S. Ct. 559, 86 A.L.R. 403.

In *United States v. L. Cohen Grocery Company*, 255 U. S. 81, 65 L. ed. 516, 41 S. Ct. 298, 14 A. L. R. 1045, the court considered a federal statute which made it unlawful for any person willfully to make any unjust or unreasonable charge in handling or dealing with any necessaries. The question presented was whether the statute constituted a fixing by Congress of an ascertainable standard of guilt adequate to inform persons accused of violations thereof of the nature and cause of the accusation against them. The court said:

"Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee, and the result of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below in its opinion to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all

acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury." *United States v. L. Cohen Grocery Co.,* supra.

The statute was held void for repugnancy to the Constitution of the United States.

To the same effect, see *Lanzetta v. New Jersey,* 306 U. S. 451, 83 L. ed. 888, 59 S. Ct. 618 (statute making it a crime to be a member of a gang, etc., held unconstitutional under the 14th Amendment); *Herndon v. Lowry,* 301 U. S. 242, 81 L. ed. 1066, 57 S. Ct. 732 (penalizing attempt by persuasion to induce others to join in combined resistance to lawful authority); *Connally v. General Construction Company,* 269 U. S. 385, 70 L. ed. 322, 46 S. Ct. 126 (prohibiting payment of less than the current rate of wages); *Todd v. United States,* 158 U. S. 278, 39 L. ed. 982, 15 S. Ct. 889; *United States v. Capital Traction Company,* 34 App. D. C. 592, 19 Ann. Cas. 68, (prohibiting operation of crowded street cars).

■ ■ Notwithstanding the established rule that indefinite statutes are subject to condemnation under the 14th Amendment, it cannot be said that every statute containing broad and indefinite prohibitions is to be held unconstitutional as wanting in due process. A criminal statute passed pursuant to the police power should be stricken down for indefiniteness only if it cannot be saved wholly or in part by judicial application of the rules of statutory construction. The federal decisions are by no means uniform or consistent, but the trend has been strongly toward upholding statutes containing broad general provisions especially when their scope has been restricted by construction in the

state courts prior to examination by the federal tribunal.

"In this connection it may be stated that there has been a tendency to a much more liberal construction of such statutes in the more recent decisions, and this may in part be the result of more humane and liberal methods of dealing with those who are convicted of crime, and in part from the wide field now covered by the criminal law." (Citing *Standard Oil Company v. United States,* 221 U. S. 1, 55 L. ed. 619, 31 S. Ct. 502, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734.) *Ex Parte Daniels,* 183 Cal. 636, 192 P. 442, 21 A. L. R. 1172.

As against the Cohen Grocery case, supra, wherein a statute prohibiting "unreasonable charges" was held void for uncertainty, other decisions have upheld statutes containing similar general and indefinite provisions. The Sherman Act was held enforcible notwithstanding the generality of the words prohibiting "every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade". Over the protest of Justice Holmes and three other members of the court, the scope of the prohibition was extended beyond the common-law meaning of the words employed in the statute. *Northern Securities Co. v. United States,* 193 U. S. 197, 48 L. ed. 679, 24 S. Ct. 436.

A few years later the court returned to the approximate common-law meaning of the words used and held that only undue restraints of trade were prohibited. *Standard Oil Company v. United States,* supra, 221 U. S. 1, 55 L. ed. 619. Thereafter one Nash was indicted under the Sherman Act. He demurred on the ground that the "rule of reason" which had been engrafted upon the statute by the decision in the Standard Oil case rendered the Act so vague as to be

inoperative on its criminal side. The court, by Justice Holmes, said:

"But, apart from the common law as to the restraint of trade thus taken up by the statute, the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it' by common experience in the circumstances known to the actor. 'The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.' * * * 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' " *Nash v. United States,* 229 U. S. 373, 377, 57 L. ed. 1232, 33 S. Ct. 780.

In *United States v. Ragen,* 314 U. S. 513, 86 L. ed. 383, 62 S. Ct. 374, the federal statute prohibited willful attempts to evade the income tax. It was pointed out that guilt or innocence under some conditions might depend upon the reasonableness of commissions paid. The court said:

"The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct." *United States v. Ragen,* supra.

In *Minnesota Ex Rel. Pearson v. Probate Court,* 309 U. S. 270, 84 L. ed. 744, 60 S. Ct. 523, 126 A. L. R. 530, a Minnesota statute provided that persons having a "psychopathic personality" should be subject to

commitment under the procedure relating to insane persons. The term, "psychopathic personality," received the following nebulous statutory definition:

"The existence in any person of such conditions of emotional instability, or impulsiveness of behavior or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons." *Minnesota Ex Rel. Pearson v. Probate Court,* supra.

The validity of the act was challenged on the ground of its uncertainty. The state court construed the statute as follows:

"Applying these principles to the case before us, it can reasonably be said that the language of § 1 of the act is intended to include those persons who, by an habitual course of misconduct in sexual matters, have evidenced an utter lack of power to control their sexual impulses and who, as a result, are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire. It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and, perhaps, unconstitutional in its application, but would also be an unwarranted departure from the accepted meaning of the words defined." *Minnesota Ex Rel. Pearson v. Probate Court,* supra.

The Supreme Court, by Chief Justice Hughes, said:

"Any contention that the construction is contrary to the terms of the Act is unavailing here. For the purpose of deciding the constitutional questions appellant raises we must take the statute

as though it read precisely as the highest court of the State has interpreted it. * * *

"This construction of the statute destroys the contention that it is too vague and indefinite to constitute valid legislation." *Minnesota Ex Rel. Pearson v. Probate Court,* supra.

*Alabama State Federation of Labor v. McAdory,* 325 U. S. 450, 89 L. ed. 1725, 65 S. Ct. 1384, involved a state statute which imposed general and indefinite regulations upon labor unions. The statute was challenged as vague and indefinite, and situations were suggested in which the enforcement of the broad provisions of the act would be unconstitutional. The United States Supreme Court, with notable unanimity, made the following pronouncement:

"To say that the statute would be unconstitutional if applied to such exactions is not to say that the section cannot constitutionally apply to exactions which the legislature could have thought coercive, oppressive or otherwise unjust. It is not denied that labor organizations have indulged in such practices, and obviously we cannot assume in the face of the constitutional objections that they do not, or that the state could not make § 15 applicable to them. * * *

"State courts, when given the opportunity by the presentation to them for decision of an actual case or controversy, may, and often do, construe state statutes so that in their application they are not open to constitutional objections which might otherwise be addressed to them. Cox v. New Hampshire, 312 U. S. 569, 575, 85 L. ed. 1049, 1053, 61 S. Ct. 762, 133 A. L. R. 1396, compare Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506, 82 L. ed. 392, 58 S. Ct. 295, with Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, 80 L. ed. 91, 56 S. Ct. 31." *Alabama State Federation of Labor v. McAdory,* supra.

In *Smiley v. Kansas,* 196 U. S. 447, 49 L. ed. 546, 25 S. Ct. 289, a state anti-trust statute was challenged for indefiniteness and as conflicting with the 14th Amendment. The court said:

"It may be conceded, for the purposes of this case, that the language of the 1st section is broad enough to include acts beyond the police power of the state, and the punishment of which would unduly infringe upon the freedom of contract. At any rate we shall not attempt to enter into any consideration of that question. The supreme court of the state held that the acts charged and proved against the defendant were clearly within the terms of the statute, as well as within the police power of the state; and that the statute could be sustained as a prohibition of those acts irrespective of the question whether its language was broad enough to include acts and conduct which the legislature could not rightfully restrain.

"It is well settled that in cases of this kind the interpretation placed by the highest court of the state upon its statutes is conclusive here. We accept the construction given to a state statute by that court. * * *" *Smiley v. Kansas,* supra.

In *United States v. Smith,* 5 Wheat. 153, 5 L. ed. 57, the Supreme Court, in an opinion by Story, J., upheld a federal statute punishing piracy as defined by the law of nations.

Sections 19 and 20 of the Federal Criminal Code, U. S. C. A. Title 18, Ch. 3, §§ 51 and 52, prohibit conspiracy to injure any citizen in the free exercise of any right secured to him by the Constitution of the United States, § 19, and declare it to be a crime, under color of any law, statute, ordinance, regulation or custom to willfully subject any inhabitant of any state to the deprivation of any rights, privileges or immunities secured or protected by the Constitution and

laws of the United States, § 20. Even elusory provisions such as these have been limited by construction involving subtle judicial distinctions and then upheld. See *United States v. Saylor*, 322 U. S. 385, 88 L. ed. 1341, 64 S. Ct. 1101; *United States v. Classic*, 313 U. S. 299, 85 L. ed. 1368, 61 S. Ct. 1031; *United States v. Bathgate*, 246 U. S. 220, 62 L. ed. 676, 38 S. Ct. 269; *United States v. Mosley*, 238 U. S. 383, 59 L. ed. 1355, 35 S. Ct. 904. Both sections of the statute have been construed and applied in a multitude of cases, culminating in *Screws v. United States*, 325 U. S. 91, 89 L. ed. 1495, 65 S. Ct. 1031.

In the Screws case a county sheriff, who had beaten his prisoner to death under circumstances constituting murder, was held by a majority of the Supreme Court to come within the prohibition of § 20 of the Federal Criminal Code, supra, in substance, because by killing the prisoner he had deprived him of his right to a fair trial under the 14th Amendment. Thus was the door opened for the conviction under § 52 of any person who "willfully," under color of law, deprives an inhabitant of a right guaranteed him under the due process clause, the content of which is determined only by "the gradual process of judicial inclusion and exclusion". See persuasive dissent of Justices Roberts, Frankfurter and Jackson, *Screws v. United States*, supra.

■ We neither need, nor are we inclined, to construe a law of this state as covering by its prohibition an area as indefinite and inclusive as that suggested in the Screws case. But enough has been said to indicate, first, that federal statutes as indefinite in their terms as the state statute now before us have been held immune to the condemnation of the due process clause; and, second, that if a state statute is by the

state courts limited in its application to cases which come clearly within it, the construction as limited will be adopted by the United States Supreme Court. If the act as construed violates no provision of the Federal Constitution, that court will not invalidate the act because of its indefiniteness prior to construction. See also *Skinner v. Oklahoma,* 316 U. S. 535, 86 L. ed. 1655, 62 S. Ct. 1110; *Thornhill v. Alabama,* 310 U. S. 88, 84 L. ed. 1093, 60 S. Ct. 736; *Kay v. United States,* 303 U. S. 1, 82 L. ed. 607, 58 S. Ct. 468; *Hygrade Provision Co. v. Sherman,* 266 U. S. 497, 69 L. ed. 402, 45 S. Ct. 141; *Miller v. Strahl,* 239 U. S. 426, 60 L. ed. 364, 36 S. Ct. 147.

Thus narrowed down, the immediate question before us is whether by the application of the general rules of construction we can uphold the statute prohibiting sexual perversity in its application to the particular facts of this case.

As we have seen, the "void for indefiniteness" doctrine as applied in the earlier cases was an outgrowth of the common-law rule that criminal statutes must be strictly construed in favor of the accused. That rule has been abrogated by our statute:

> "Construction of penal statutes. The rule of the common law that penal statutes are to be strictly construed has no application to this Code, but all its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." O. C. L. A. § 23-106.

■ But the rule of strict construction, if applicable, has little bearing in a case of this kind. The problem here is not whether we can extend a penal statute beyond the meaning of the words used. The question is whether we can properly limit the meaning of gen-

eral words to cases reasonably within them and within the evil which the legislature intended to suppress.

■ Again, since indefinite statutes may be held violative of the due process clause, it becomes our duty to seek a construction which will avoid unconstitutionality. *Coach v. Gage,* 70 Or. 182, 138 P. 847; *State of Oregon v. Standard Oil Co.,* 61 Or. 438, 123 P. 40, Ann. Cas. 1914B, 179; *Portland & W. V. R. R. Co. v. City of Portland,* 14 Or. 188, 12 P. 265, 58 Am. Rep. 299; *State v. West Side St. Ry. Co.,* 146 Mo. 155, 47 S. W. 959.

In the latter case the Supreme Court of Missouri said:

"Does the act sufficiently express the legislative will to enable the courts and officers charged with its execution to ascertain and enforce it? A statute cannot be held void for uncertainty, if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations, will not render it nugatory. Doubts as to its construction will not justify us in disregarding it. It is the bounden duty of the courts to endeavor, by every rule of construction, to ascertain the meaning of, and to give full force and effect to, every enactment of the general assembly not obnoxious to constitutional prohibitions." *State v. West Side St. Ry. Co.,* supra.

See also 11 Am. Jur., Constitutional Law § 164, p. 858.

Again it is said:

"It is common, in the interpretation of statutes of every class, to except out of their operation cases clearly not within the mischief intended to be remedied. On the other hand * * * a penal statute 'cannot be extended by implication or con-

struction to cases within the mischief, if they are not at the same time within the terms, of the act, fairly and reasonably interpreted.' " Bishop, Statutory Crimes (3rd ed.) 213.

It is true that application of the foregoing rule requires careful judicial scrutiny of prosecutions under statutes couched in general terms. But it is for such purpose that this court sits.

This court has said:

"The constitutionality of a statute not plain upon its face must be determined in the light of the construction placed upon it and the application made of it to a given state of facts. Hence, the same statute, if given one construction and one application to a given state of facts, may be constitutional, while the same statute, if given another construction and differently applied to the same facts, may be unconstitutional." *Moreland Theatres v. M. P. Union*, 140 Or. 35, 41, 12 P. (2d) 333.

After the process of construction has been accomplished, the decisions still admonish that we should indulge every presumption in favor of validity and declare no act of the legislature void unless invalidity be shown beyond a reasonable doubt. *Sinking Fund Cases*, 99 U. S. 700, 25 L. ed. 496; *Ogden v. Saunders*, 12 Wheat. 213, 6 L. ed. 606, 625; *The Trustees of Dartmouth College v. Woodward*, 4 Wheat. 518, 4 L. ed. 629, 656; *State v. Kincaid*, 133 Or. 95, 285 P. 1105, 288 P. 1015; *State v. Bailey*, supra; *State v. Laundy*, 103 Or. 443, 204 P. 958, 206 P. 290.

In the application of the foregoing principles, this court has upheld criminal statutes couched in general and indefinite terms unknown to the common law when applied to cases clearly within the prohibiting language

as narrowly construed. In *Johnson v. Oregon Stevedoring Co., Inc.,* 128 Or. 121, 270 P. 772, the statute which made it a misdemeanor to blacklist any employee was held not void for indefiniteness. The criminal provisions of the "basic rule" in the Oregon Motor Vehicle Code have been enforced regardless of the fact that the test of criminality is the failure to use due care. O. C. L. A. § 115-320. See *Zeek v. Bicknell,* 159 Or. 167, 78 P. (2d) 620.

In numerous cases this court has construed and upheld our statute which in substance prohibits any act encouraging, causing or contributing to delinquency, or any command or persuasion or endeavor to induce a child to do or perform any act or follow any course of conduct which would manifestly tend to cause the child to become delinquent. Laws of 1907, Ch. 69, § 1. As amended, see O. C. L. A. § 23-1034. The Laws of 1907, Ch. 34, § 1, p. 40, contained a broad definition of a delinquent child which includes one who violates any law, or is incorrigible, or is persistently truant from school, or associates with criminals or immoral persons, or is growing up in idleness or crime, etc. This section has been amended and is now O. C. L. A. § 93-603.

In *State v. Dunn,* 53 Or. 304, 99 P. 278, 100 P. 258, it was charged by indictment that the defendant endeavored to induce a child to follow a course of conduct that would cause her to become a delinquent child. The allegations of the indictment, briefly stated, were that the defendant by words and improper physical intimacies attempted to induce the child to have sexual intercourse with him. The court cited O. C. L. A. § 23-106, supra, and said:

"It accordingly follows that, in this State, penal statutes must be interpreted, not according to the

strict letter thereof, but in conformity with a fair import of their terms. State v. Brown, 7 Or. 186, 209; State v. Turner, 34 Or. 173, 181 (52 Pac. 92: 56 Pac. 645)." *State v. Dunn,* supra.

The indictment was held sufficient.

An Oregon statute provides that "if any person shall willfully and wrongfully commit any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to public morals, such person" shall be punished. O. C. L. A. § 23-927. The court has avoided the charge that the statute is too uncertain, by holding that it was intended to prohibit common-law nuisances, although it does not employ the term "indictable nuisance" or refer by name to any common-law crime. *Multnomah Co. Fair Ass'n. v. Langley,* supra. It appears that the common-law idea of an indictable nuisance is substantially as indefinite as the statute.

In *State v. Waymire,* 52 Or. 281, 97 P. 46, 21 L. R. A. (N. S.) 56, 132 Am. St. Rep. 699, the court greatly extended the purview of the statute. The defendants were convicted of conspiring against Harry Lane, mayor of Portland, by a "frame-up" in which they attempted to publicly expose him as a rapist. The court referred to the rules of the common law which purported to specify what acts grossly outrage public decency and are contrary to good morals. Various types of misconduct were held to come within the broad phraseology of the act, and the conviction was affirmed.

In *State of Oregon v. Bergman,* 6 Or. 341, it was held under the same statute that "the crime is complete; either if the act 'grossly injures the person or

property of another,' or 'grossly disturbs the public peace or health,' or 'openly outrages the public decency, and is injurious to public morals.' "

The foregoing cases illustrate that acts may be criminal under the statute cited if common-law courts have held (or perhaps shall hold) that similar acts constitute a common-law nuisance. The process of reasoning is similar to that employed in *Screws v. United States*, supra, the difference being that in the Oregon cases the prohibition of the statute has been upheld by reference to indefinite rules of the common law, while in the Screws case the provision is upheld by reference to the indefinite decisions of the Supreme Court under the due process clause.

■ The rule of construction which we approve is well stated by Wharton as follows:

"The courts are, on the one hand, to refuse to 'extend the punishment to cases which are not clearly embraced' in the statutes; on the other hand, to refuse, 'by any mere verbal nicety, forced construction, or equitable interpretation, to exonerate parties plainly within their scope.' " 1 Wharton, Criminal Law (12th ed. 1932) § 40, p. 56.

In *State v. Lebow*, 128 Kan. 715, 280 P. 773, it is said:

"Where the evil sought to be prevented is apparent, a reasonable construction of the language employed is justified and uncertainty can frequently be removed by resort to the context instead of attempting to construe words by themselves.

" 'In determining the meaning of a statute, consideration should first be given to the language employed therein, but, especially in applying a criminal statute, the courts should have regard to the evil sought to be remedied, for that which is not within the spirit of the statute, although within

the letter thereof, is not in legal contemplation a part of it.' (State v. Hanchette, 88 Kan. 864, syl. par. 2, 129 P. 1184.)'' *State v. Lebow, supra.*

Among other cases in which statutes phrased in broad and general terms have been limited by construction and then applied to situations clearly within the statutory words as construed are the following: *United States v. Walter,* 263 U. S. 15, 68 L. ed. 137, 44 S. Ct. 10; *Gatewood v. North Carolina,* 203 U. S. 531, 51 L. ed. 305, 27 S. Ct. 167; *State v. Marshfield,* 122 Or. 323, 259 P. 201; *State v. 1920 Studebaker Touring Car,* 120 Or. 254, 251 P. 701, 50 A. L. R. 81; *Calder v. Orr,* 105 Or. 223, 209 P. 479; *Hoefler v. Mickle,* 78 Or. 399, 153 P. 417; *Ex Parte Case,* 70 Or. 291, 135 P. 881, 141 P. 746, Ann. Cas. 1916B, 490; *Drummey v. State Board of Funeral Directors, Etc.,* 13 Cal. (2d) 75, 87 P. (2d) 848; *Phillips v. Municipal Court of Los Angeles,* 24 Cal. App. (2d) 453, 75 P. (2d) 548; *State v. Holder,* 49 Idaho 514, 290 P. 387; *The People v. Mueller;* 352 Ill. 124, 185 N. E. 239; *Hunt v. State,* 195 Ind. 585, 146 N. E. 329; *People v. Pieri,* 269 N. Y. 315, 199 N. E. 495.

Applying the foregoing principles to the case at bar, we concede that there is a grave question whether the statute can be saved from invalidity in view of the indefiniteness of the phraseology. By this statute the legislature has ventured into the dim and uncertain mazes of abnormal psychology. If the act were to be left unlimited and undefined by construction and the question of guilt or innocence were left in every case as a question of fact for the jury, we think it would not only be void for uncertainty but might also be applied in such manner as to invade other constitutional rights. But we hold that the statute may be so limited by construction as to render it valid as here applied.

We cannot hold the statute void for indefiniteness unless we are prepared to overrule a previous decision of this court. In *State v. Brazell*, 126 Or. 579, 269 P. 884, the defendant was charged with the commission of an act of sexual perversity which it was alleged was committed by practicing an act of masturbation upon a boy. Without citation of authority, this court in a unanimous decision said: "It was certainly within the power of the legislature to declare acts of sexual perversity criminal." The court added that the act charged constituted an act of sexual perversity "within the ordinary meaning and acceptation of the words." The act charged in the Brazell case did not come within the prohibition of either the first or third portions of the statute. The conviction was sustainable only under the prohibition of acts of sexual perversity.

 The defendant contends that the true construction of the amendment should be determined by the doctrine of *ejusdem generis,* and we agree that the doctrine is relevant here as an aid to construction. But it is clear that the words "sexual perversity" cannot be limited in their application to cases involving carnal copulation, for such cases were already included in the sodomy statute before its amendment. If the amendment has any meaning (and we have held that it does), it must cover forms of misconduct not previously prohibited by the act. By applying the doctrine of *ejusdem generis,* we find that the words "or any act or practice of sexual perversity" are preceded in the statute by the words "if any person shall commit sodomy or the crime against nature". As we have said, the words "sodomy or the crime against nature" have a definite meaning at common law. Those terms, which are synonymous, relate and are limited to offenses

directly involving the sex organ of at least one of the parties; and, by application of the rule of construction invoked by the defendant, we conclude that the prohibited acts of sexual perversity are likewise so limited.

■ The prosecution in reliance upon statements found in learned dissertations on abnormal psychology has urged upon the court that any act of physical contact by a male person with the body of a female person with intent to cause and causing sexual satisfaction to the actor constitutes an act of sexual perversity. Whatever may be said by the psychiatrists concerning this theory, we reject it as unreasonable, arbitrary and an unconstitutional criterion when applied to a criminal statute.

■ Not only must the statute be limited to cases directly involving the sex organ, but, applying the same rule of construction, it must be limited to unnatural conduct contrary to the course of nature. The act does not prohibit such personal and physical intimacies as accompany or precede normal relations and intercourse between the sexes. Again the prohibited conduct must in this case have been performed for the purpose of accomplishing abnormal sexual satisfaction on the part of the actor. We think the evidence was such as to warrant the jury in finding the defendant was guilty within the meaning of the statute as thus construed.

■■ It is the defendant's contention that, since the only actual penetration of the sex organ of his helpless victim was accomplished by rupturing the inner wall thereof, the defendant's act did not directly involve the sex organ and could not be deemed sexual perversity. But we think the sex organ was as directly involved as if penetration had been accomplished in

a less brutal manner. As performed, the act brought the defendant not only to the door of the penitentiary but to the threshold of the execution chamber. It was only by good fortune that his victim did not die. The jury were warranted in inferring from the evidence that the obscene act was performed for the purpose of abnormal sexual satisfaction.

■■■ It is an accepted rule that he who challenges an act under the 14th Amendment must be one against whom the act in fact operates without due process. This defendant is not such a person. See 29 California Law Rev. 548, note.

◢■ The remaining assignments of error relate to the instructions. Exception was taken to the refusal of the court to instruct as follows:

"You are instructed that should you find that an instrument was inserted up into the bowel and that it penetrated through the wall thereof into the vagina that would not constitute a crime of sexual perversity."

To have given the instruction requested would have been to advise the jury that the act described could not have constituted sexual perversity, regardless of criminal intent, purpose, abnormal satisfaction, circumstances or results. The court properly refused the request.

Exception was also taken to the refusal of the court to instruct as follows:

"V. You are instructed that the 'anal opening' mentioned in the Indictment refers to the anus; situated near the anal orifice or opening of the rectum and not to the sex organ, therefore the penetration of such opening, except by the male organ, would not constitute the crime of sodomy or sexual perversity."

The court gave the instruction but in modified form as follows:

"You are instructed that the anal opening mentioned in the indictment refers to the anus, situated near to the anal orifice or opening of the rectum and not to the sex organ. Therefore the penetration of such anal opening, alone, in and of itself, except by the male organ, would not constitute the crime of sexual perversity, would not necessarily constitute the crime of sexual perversity. For instance a doctor with a probe might penetrate the anal opening in the rectum, that would not be sexual perversity. It would be necessary that the sex organ of one party or the other be involved, either penetrated or manipulated, to constitute the crime of sexual perversity. It involves an effort to satisfy the sexual desires of one party or the other."

The only exception taken to the foregoing instruction as given by the court was to the effect that defendant objected to the modification of Instruction V "by adding the word 'alone,' which word," said counsel, "entirely changes the meaning of that instruction, and which word so changes the meaning that the question of accidental puncture or entry is not taken into consideration, neither is the question of sexual satisfaction taken into consideration". The insertion of the word "alone" was proper, and the other objections are without merit. No other exception was taken to the carefully worded instructions of the trial court which covered the issues and were in substantial harmony with the views which we have expressed concerning the construction of the statute.

It will be recalled that the indictment charges that the act was done willfully, knowingly, intentionally and by force and violence, with the intent to commit

an act of sexual perversity. The word "willful" is not found in the statute; but the scope of the statutory prohibition was narrowed for the particular case by the wording of the indictment, and the jury was instructed that the state must prove the particular act charged, namely, a willful act.

As said in *Monnet v. Ullman,* 129 Or. 44, 276 P. 244:

"In the case of Parker v. Pennsylvania Co., 134 Ind. 673 (34 N. E. 504, 23 L. R. A. 552), we find this definition, which seems accurate:

" 'To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is quasi criminal.' " *Monnet v. Ullman,* supra.

See also *Screws v. United States,* supra.

Under the instructions, the jury must have fully understood that the defendant could be convicted only upon proof beyond reasonable doubt and that the act was done with a reckless disregard of the safety of his victim and a willingness to inflict the injury unlawfully.

As construed herein and as applied by the trial court, we find the statute constitutional in its application to the case at bar. The indictment, while not artfully drawn, did, nevertheless, state the crime in such a manner as to enable a person of common understanding to know what is intended. O. C. L. A. § 26-714. As we find no error prejudicial to the rights of the defendant, the conviction is affirmed.